# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: ) | |
| ) | |
| JAMES CARL JOHNSON and ) | Case No. 08-43851-13-JWV |
| JENNIFER LOUISE JOHNSON, ) | |
| ) | |
| Debtors. | |

## MEMORANDUM OPINION

Under § 1325(b)(1) of the Bankruptcy Code, if a trustee objects to the confirmation of a Chapter 13 plan – which he has in this case – a court may not approve the plan unless it provides that "all of the debtor's projected disposable income . . . [is] applied to make payments to *unsecured creditors* under the plan."[1] The resolution of the Trustee's objection hinges on the definition of the term "unsecured creditors." The Debtors argue that this term encompasses both priority and non-priority unsecured creditors, and, consistent with this interpretation, they have proposed a Chapter 13 plan that provides for their disposable income to be shared between priority and non-priority creditors. The Trustee, on the other hand, contends that "unsecured creditors" refers to only non-priority unsecured creditors (more commonly referred to as general unsecured creditors) and, therefore, confirmation of the Debtors' plan should be denied.

For the reasons set out below, the Court holds that for purposes of § 1325(b)(1)(B), the term "unsecured creditors" refers to solely non-priority unsecured creditors. Consequently, the Trustee's motion to deny confirmation[2] of the Debtors' Chapter 13 plan will be granted.[3]

## FACTUAL BACKGROUND

The facts are undisputed. The Debtors, James Carl Johnson and Jennifer Louise Johnson, filed a voluntary petition under Chapter 13 of the Bankruptcy Code on September 17, 2008. The Debtors' income is above the median income for the State of Missouri. According to the Official

---

[1] 11 U.S.C. § 1325(b)(1)(B) (emphasis added).

[2] The Chapter 13 trustee, Richard V. Fink ("Trustee"), styles his objections to confirmation as "motions to deny confirmation" instead of "objections to confirmation." Substantively, there is no difference; the requirements of § 1325(b)(1) are still triggered.

[3] This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1).

Form B22C filed with their bankruptcy petition, the Debtors have $272.93 in monthly disposable income. Notably, the Debtors included an expense deduction of $172.04 for the payment of priority unsecured claims in calculating their disposable income. As of the date of the Trustee's objection, $9,945.80 in priority unsecured claims and $20,817.77 in non-priority unsecured claims have been filed.[4]

The latest iteration of the Debtors' Chapter 13 plan provides for a total payment of $11,280.60 to be distributed to priority and non-priority creditors. However, after the Debtors' attorney and other priority creditors are paid, nothing will be left for distribution to the non-priority unsecured creditors.[5] On the other hand, if this amount is paid to only non-priority unsecured creditors, they will receive a dividend of approximately 54%.[6]

## DISCUSSION

As a preliminary matter, the Court notes that the Debtors' plan cannot be confirmed for the simple reason that it does not provide for the payment of all of the Debtors' disposable income to "unsecured creditors," regardless of how that term is interpreted in § 1325(b)(1)(B). According to the Debtors' calculations (on Official form B22C), they have $272.93 in monthly disposable income. The Debtors' income is above the median for the State of Missouri, so the "applicable commitment period" over which they must pay this amount to unsecured creditors is sixty months.[7] Therefore, the Debtors' plan would have to provide a minimum distribution of $16,375.80 ($272.93 x 60) to unsecured creditors. It fails to do this; as proposed, the Debtors' plan provides for a distribution of only $11,280.60, and that amount is insufficient under § 1325(b)(1)(B) to obtain confirmation over the Trustee's objection.

---

[4] These figures are taken from the brief filed by the Trustee in support of his objection. As of the date of this Memorandum Opinion, the claims register reflects $9,945.80 in priority unsecured claims and $20,308.70 in non-priority unsecured claims.

[5] The disposable income "pot" is actually insufficient to satisfy even the priority claims filed and the Debtors' attorney's fees.

[6] If attorney's fees are paid out of that amount, the distribution percentage will be slightly less.

[7] 11 U.S.C. § 1325(b)(3) and (4).

2

While confirmation of the Debtors' plan could be denied on this basis alone, the Court will address the Trustee's objection because: 1) it has merit, and 2) it provides the Court an opportunity to clarify an arguably murky provision of BAPCPA.[8]

**1.     The plain language of 11 U.S.C. § 1325(b)(1)(B).**

As noted above, the resolution of the Trustee's objection turns on the interpretation of the term "unsecured creditors" in 11 U.S.C. § 1325(b)(1)(B). Hence, the Court "begin[s] where all such inquiries begin: with the language of the statute itself."[9]

The relevant portion of § 1325(b)(1) provides:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
>
> \* \* \*
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

Section 1325(b), as modified by Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), is no stranger to controversy. Most notably, the meaning of the phrase "projected disposable income" has been, and continues to be, the subject of much debate.[10] On the other hand, despite the apparent ambiguity in the term "unsecured creditors," courts have unanimously agreed that it does not refer to priority unsecured creditors.[11]

---

[8] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub.L. 109-8, Apr. 20, 2005, 119 Stat. 23).

[9] *United States v. Ron Pair Enter. Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989).

[10] *See In re Laroy Davis*, 392 B.R. 132, 137-41 (Bankr. E.D. Pa. 2008) (outlining cases that are divided on how to calculate a debtor's "projected disposable income"). *See also id*. at 143-46 (outlining cases that are divided on whether the "applicable commitment period" is a monetary or temporal requirement).

[11] *See In re Williams*, 394 B.R. 550, 562-64 (Bankr. D. Colo. 2008); *In re Law*, 2008 WL 1867971, *1 (Bankr. D. Kan. 2008); *In re Echeman*, 378 B.R. 177 (Bankr. S.D. Ohio 2007); *In re Puetz*, 370 B.R. at 391; *In re Amato*, 366 B.R. 348 (Bankr. D. N.J. 2007); *In re Wilbur*, 344 B.R. 650, 654 (Bankr. D. Utah 2006). *See also In re Rush*, 387 B.R. 26, n.5 (Bankr. W.D. Mo. 2008) (noting the holdings in these cases). Some disagreement remains, however, with regard to attorney's fees and *post-petition* priority claims. *Compare In re Amato*, 366 B.R. at 353 (holding that § 1325(b)(1) does not permit attorney's fees or administrative claims to be paid out of the disposable income pot), with *In re Puetz*, 370 B.R. at 391-92 (holding that it does). In this jurisdiction, although attorney's fees constitute priority claims under § 330(a)(4)(B), 503(b), and 507(a), they are paid out of the disposable income "pot."

In the face of this authority, the Debtors contend that the term "unsecured creditors" includes priority and non-priority creditors because the plain language of § 1325(b)(1)(B) does not qualify or distinguish the term "unsecured creditors."

Admittedly, § 1325(b)(1)(B) is not a paragon of clarity. The unqualified term "unsecured creditors" could, conceivably, encompass priority and non-priority unsecured creditors. However, a "plain language" analysis of a statute does not mean that it is read in a vacuum. Rather, a plain language inquiry "requires consideration of the context, reading all relevant statutory provisions together as a whole."[12] The entirety of a statutory scheme may clarify provisions that, in isolation, appear imprecise, especially when "only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law. . . ."[13] In this instance, at least two related provisions of the Bankruptcy Code clarify that the term "unsecured creditors" in § 1325(b)(1)(B) refers to only non-priority unsecured creditors.

First is the requirement in § 1322(a)(2) that a Chapter 13 plan provide for the full payment of all priority claims (unless a creditor agrees to a different treatment).[14] If a debtor is required to pay his priority claims in full, it would be illogical, if not contradictory, to read § 1325(b)(1)(B) as permitting a debtor to pay only a portion of his priority claims, provided he devotes all of his disposable income to the plan.

Second, and perhaps more compelling, is the interaction between § 1325(b)(1)(B) and § 707(b)(2). These provisions are tied together by § 1325(b)(3), which provides that for above-median income debtors the (projected) disposable income referred to in § 1325(b)(2) is to be determined "in

---

As a technical matter, they probably shouldn't be; they should be deducted as a priority debt expense pursuant to § 707(b)(2)(A)(iv) which refers simply to "priority claims." As a practical matter, however, it is a distinction without relevance since the resulting distribution to unsecured creditors is the same regardless of when attorney's fees are deducted from a debtor's disposable income.

[12] *In re Echeman*, 378 B.R. 177 (Bankr. S.D. Ohio 2007) (citing *In re Rufener Construction, Inc.*, 53 F.3d 1064, 1067 (9th Cir. 1995).

[13] *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988).

[14] 11 U.S.C. § 1322(a)(2).

accordance with subparagraphs (A) and (B) of section § 707(b)(2)."[15] Section 707(b)(2), in turn, calculates a debtor's disposable income by reducing a debtor's current monthly income[16] by the expenses listed in § 707(b)(2)(A) and (B).[17] One of these expenses is for "payment of all priority claims (including child support and alimony claims) . . . calculated as the total amount of debts entitled to priority, divided by 60."[18] Thus, the presumptive disposable income that must be paid to "unsecured creditors" under § 1325(b)(2) explicitly accounts for the payment of priority claims. It would then be absurd to permit the holders of these priority claims to be paid from that disposable income. In other words, interpreting the term "unsecured creditors" in § 1325(b)(2) to include priority creditors would, in essence, permit a debtor to "double-count" payments on priority claims.[19]

In light of this absurd result, the Court must reject the Debtors' suggestion that the term "unsecured creditors" in § 1325(b)(2) includes priority creditors. The plain language of the statute, considered in context, has only one permissible interpretation – the term "unsecured creditors" refers to only non-priority unsecured creditors.

**2.      Beyond the plain language of § 1325(b)(2).**

A court should not inquire beyond the plain language of a statute unless: (1) a literal application of the statutory language would produce an absurd result,[20] or (2) a literal application

---

[15] In cases involving below-median income debtors, disposable income is arrived at by reference to Schedule J instead of § 707(b)(2), so the precise issue presented by the present case would not arise in a case involving below-median debtors. However, the term "unsecured creditors" would have the same meaning in either case.

[16] A term defined by 11 U.S.C. § 101(10A) essentially as the average monthly income for the six months prior to the petition date.

[17] Under *In re Frederickson*, 545 F.3d 652 (8th Cir. 2008), § 707(b)(2) is the starting point for the determination of an above-median debtor's "projected disposable income," but the final calculation may take into consideration changes that have occurred in a debtor's financial circumstances, as well as the debtor's actual income and expenses as reported on bankruptcy schedules. Neither the Trustee nor the Debtors have argued that the disposable income calculated in accordance with § 707(b)(2) is not accurate or appropriate.

[18] 11 U.S.C. § 707(b)(2)(A)(iv).

[19] *See e.g., In re Wilbur*, 344 B.R. at 654. Every case following *Wilbur* has cited the absurdity of "double-counting" priority claims as a basis for interpreting "unsecured creditors" as referring to only priority creditors.

[20] *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982).

of the statutory language would be at odds with the manifest intent of the legislature.[21] In this case, even if the Court found that the plain meaning of the term "unsecured creditors" in § 1325(b)(2) encompasses priority creditors, the Court would depart from the plain language because both of these exceptions apply.

        **a.     A literal interpretation of § 1325(b)(1)(B) produces an absurd result.**

The same absurdity that narrows the permissible interpretations of "unsecured creditors" under a plain language analysis to one that excludes priority creditors also precludes the Court from accepting a literal interpretation of § 1325(b)(1)(B) in which "unsecured creditors" encompasses priority creditors. As discussed above, the formula in § 707(b)(2) used to determine an above-median debtor's presumptive projected disposable income under § 1325(b) deducts the amounts to be paid to priority unsecured creditors to reach a determination of a debtor's disposable income. The logical conclusion from that formula is that the remainder is to be used to pay creditors other than those for which deductions were taken, *i.e.*, non-priority unsecured creditors. Therefore, to the extent the plain language of § 1325(b)(1)(B) mandates an interpretation of "unsecured creditors" that encompasses priority creditors, the Court rejects that interpretation in favor of one that does not.

        **b.     A literal application of § 1325(b)(1)(B) is at odds with the manifest intent of the legislature.**

Congress enacted BAPCPA, in part, to deal with perceptions of abuse of the bankruptcy system.[22] The formula in 11 U.S.C. § 707(b)(2), as amended by BAPCPA, was designed to "'ensure that those who can afford to repay some portion of their unsecured debts [be] required to do so.'"[23] In the Chapter 7 context, this means that a debtor whose monthly disposable income exceeds the thresholds set forth in § 707(b)(2)(A)(i) must convert to Chapter 13 or face dismissal of his case.[24]

---

[21] *United States v. Ron Pair Enter. Inc.*, 409 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L. Ed. 2d 290 (1989).

[22] *In re Hardacre*, 338 B.R. 718, 720-721 (Bankr. N.D. Tex. 2006).

[23] *Id.* at 725 (quoting 151 Cong. Rec. S2470 (March 10, 2005)).

[24] 11 U.S.C. § 707(b)(1).

In the Chapter 13 context, § 707(b)(2) determines precisely (or imprecisely, as the case may be) what a debtor can "afford," *i.e.*, what constitutes "all of the debtor's projected disposable income."[25]

As discussed above, § 707(b)(2) (via § 1325(b)(3)) calculates an above-median debtor's presumptive projected disposable income by deducting the expenses listed in § 707(b)(2)(A)(ii)-(iv) from a debtor's current monthly income. These expenses include a deduction for the payment of priority claims. The Debtors suggest that Congress may have done this because it "wanted to ensure priority unsecured creditors were paid at the expense of general creditors." But that is not the result that follows from forcing priority and non-priority creditors to share in the same disposable income "pot." To the contrary, permitting a debtor to reduce his presumptive projected disposable income by taking a deduction for priority debt diminishes the amount that will be distributed to all unsecured creditors, priority and non-priority alike. And that result is at odds with the manifest intent of § 1325(b)(1)(B).

## CONCLUSION

For the reasons stated above, the Court finds that the term "unsecured creditors" in 11 U.S.C. § 1325(b)(1)(B) refers to only non-priority unsecured creditors, and, consequently, to obtain confirmation of a plan over the objection of a trustee or creditor, a debtor's Chapter 13 plan must provide for the payment of all of the debtor's projected disposable income to be applied to make payments to non-priority unsecured creditors. The Debtors' Chapter 13 plan fails to do this; it provides for their disposable income to be shared by priority and non-priority creditors. Therefore, the Debtors' plan cannot be confirmed over the objection of the Trustee. A separate Order will be entered in accordance with Bankruptcy Rule 9021.

Entered this 6$^h$ day of July 2009.

/s/ Jerry W. Venters
HONORABLE JERRY W. VENTERS
UNITED STATES BANKRUPTCY JUDGE

Copies to:
Dana M. Estes

---

[25] 11 U.S.C. § 1325(b)(1)(B) (emphasis added).

G. Addam Fera